UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PAULETTE HIBBERT,**

        **Plaintiff,**

**v.**                           **Case No.  6:22-cv-2193-CEM-DCI**

**ROSEMARIE FELLER, LAURA
M. FINCH, ANGELICA JONES,
and FELLER LAW, P.A.,**

        **Defendants.**
_____/

**ORDER**

THIS CAUSE is before the Court on Defendant Laura M. Finch's Motion to Dismiss ("Finch's Motion to Dismiss," Doc. 28), to which Plaintiff filed a Response in Opposition (Doc. 36); and Defendants', Rosemarie Feller, Angelica Jones, and Feller Law, P.A., Motion to Dismiss ("Defendants' Motion to Dismiss," Doc. 29), to which Plaintiffs filed a Response in Opposition (Doc. 38). For the reasons stated herein, Finch's Motion to Dismiss will be granted in part and denied in part, and Defendants' Motion to Dismiss will be denied.

## I.    BACKGROUND

Plaintiff was previously "in the custody of the Federal Bureau of Prisons [("BOP")]. . . from 2013 to May 2019." (Compl., Doc. 1-1, at 3). During part of that time, between 2016 and 2018, Plaintiff was housed at Federal Prison Camp ("FPC")

Alderson in West Virginia. (*Id.*). During her time at FPC Alderson, Plaintiff alleges that she "was inappropriately touched, sexually assaulted, enslaved, and trafficked for labor by Jerrod Grimes, who was a federal employee of the [BOP]." (*Id.*). Sometime in 2018, Plaintiff was then moved to Federal Correctional Institution ("FCI") Tallahassee, in Tallahassee, Florida. (*Id.*). At some point in 2019, Plaintiff was released from prison and held at the United States Immigration and Customs Enforcement ("ICE") Detention Center in Jacksonville, Florida. (Pl.'s Aff., Doc. 36-1, at 2).

Prior to Plaintiff's release from prison, "[i]n early 2018," Plaintiff retained Defendant Feller Law and Defendants Rosemarie Feller and Angelica Jones, attorneys at Feller Law, "to represent her in connection with her claims against Grimes and others, including the United States" under the Federal Tort Claims Act ("FTCA"). (*Id.*). Plaintiff alleges that Feller then "brought on [Defendant Laura M.] Finch to co-counsel and represent [Plaintiff]." (*Id.*).

In May 2018, Feller[1] sent a Notice Letter (Doc. 1-6) to BOP "to put [BOP] on notice of a claim under 28 U.S.C. § 2675," (*id.* at 3). This statute provides that "[b]efore filing an FTCA lawsuit, an individual must 'have first presented the claim to the appropriate Federal agency and h[er] claim shall have been finally denied by the agency in writing.'" *Smith v. United States*, 7 F.4th 963, 973 (11th Cir. 2021) (quoting 28 U.S.C. § 2675(a)). In July 2018, BOP sent a Response Letter (Doc. 1-7)

---

[1] The Notice Letter was on Feller Law letterhead and signed by Feller. (Doc. 1-6 at 3–4).

to Feller "acknowledg[ing] receipt" of the Notice Letter but stating that BOP could not accept the letter "as an administrative FTCA claim because it is incomplete," (*id.* at 2). The Response Letter also advised Feller that she "may complete the enclosed SF95 form and return it . . . if you desire to pursue this claim" or alternatively could revise the Notice Letter to include the missing information. (*Id.*). In July 2018, Feller submitted the SF95 form on behalf of Plaintiff, which is marked as received by BOP in September 2018. (SF95 Form, Doc. 1-8, at 3).

On January 28, 2019, BOP sent to Feller a Denial Letter (Doc. 1-9), which stated that the "claim is denied," (*id.* at 3). Further, the Denial Letter advised that "[i]f you are not satisfied with our determination in this matter, you may file suit in the appropriate U.S. District Court not later than six months after the date of this letter." (*Id.*). Plaintiff alleges that "[s]hortly after" the Denial Letter, Feller spoke with counsel for BOP, "who made a 'non-formal' offer of $1,000,000.00" to settle Plaintiff's administrative claims, an offer which Feller rejected. (Feller Statement, Doc. 1-10, at 4). Plaintiff alleges that Feller "did not present the offer of $1 million to her" and "rejected the settlement offer from [BOP] without [her] consent." (Doc. 1-1 at 5).

Plaintiff alleges that "Defendants did not file suit within six months of receiving the claim denial from [BOP]." (*Id.*). On November 21, 2019, "Finch filed a complaint on behalf of [Plaintiff], on the instruction of Feller, in the United States District Court for the Southern District of West Virginia" ("FTCA Lawsuit"). (*Id.* at

5–6). On March 2, 2021, "Feller entered an appearance in [the FTCA Lawsuit], with Finch as her sponsoring attorney." (*Id.* at 6). In July 2022, the court for the FTCA Lawsuit "conducted a trial . . . as to the issues of whether [Plaintiff]'s claims against the United States under the FTCA were time-barred." (*Id.*). At that trial, Feller was disqualified as counsel because she was required to testify as a witness, (*id.* at 7 n.2), so Jones acted as lead counsel, (*id.* at 7). The court for the FTCA lawsuit "ruled that . . . [Plaintiff]'s FTCA claims against the United States were 'forever barred' and were dismissed." (*Id.*); *see Gabbidon v. Wilson*, No. 1:19-00828 (S.D. W. Va. Aug. 12, 2022).

Plaintiff filed suit here, alleging four claims: Legal Malpractice (Count I), Breach of Fiduciary Duty (Count II), Negligent Misrepresentation (Count III), and Breach of Contract (Count IV). (Doc. 1-1 at 7–14). Both Motions to Dismiss argue for dismissal on shotgun pleading grounds. (*See generally* Doc. 28; Doc. 29 at 19–21). Additionally, Finch argues that the Court may not exercise personal jurisdiction over her. (Doc. 28 at 7–19).

## II.    SHOTGUN PLEADING MOTION TO DISMISS

### A.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 10(b) requires a party to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of

circumstances." "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1029–30 (11th Cir. 2001)).

The Eleventh Circuit has defined four types of shotgun pleadings. "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). The second most common type "is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1322. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id*. at 1322–23. "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 1323.

**B.     Analysis**

Defendants' Motion to Dismiss argues that the Complaint should be dismissed as a shotgun pleading because "all of the Defendants are lumped together and alleged

to be liable for" all of the claims. (Doc. 29 at 4). "Rule 8(a)(2)'s purpose is to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *LaCroix v. W. Dist. of Ky.*, 627 F. App'x 816, 818 (11th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As noted above, in some situations, when multiple claims are alleged against multiple defendants without specifying which defendants are responsible for which acts or omissions, it can constitute a shotgun pleading because the defendants have not been given fair notice of which actions they are responsible for. *Weiland*, 792 F.3d at 1323. However, "[t]he fact that defendants are accused collectively does not render [a] complaint deficient[ when the] complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

Here, Paragraphs eleven through forty-six of the Complaint identify exactly which actions or omissions are alleged against each Defendant. Then, the claims allege that based on those factual allegations, all Defendants are liable for each claim. This is sufficient to satisfy Rule 8 and is not a shotgun pleading, so the Complaint will not be dismissed on this basis.

### III.   RULE 12(b)(2) MOTION TO DISMISS

#### A.   Background

As to the issue of personal jurisdiction over Finch, the Complaint alleges the following:

> This Court has personal jurisdiction over FINCH because FINCH (1) breached a Florida contract; (2) caused injury to Ms. HIBBERT in Florida while engaged in service activities within Florida; and/or (3) committed tortious acts (negligent misrepresentation) within Florida. Exercising jurisdiction over Defendants is further consistent with due process.

(Doc. 1-1 at 2).

### B.    Legal Standard

Finch moves for dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(6). However, a motion to dismiss for lack of personal jurisdiction is properly raised under Federal Rule of Civil Procedure 12(b)(2).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "When a plaintiff fails to include sufficient allegations in his complaint to establish a prima facie case of personal jurisdiction, a defendant may assert a facial challenge to the complaint." *Ramirez v. Grp. Servs.*, No. 6:16-cv-1831-Orl-37KRS, 2017 U.S. Dist. LEXIS 95265, at *4 (M.D. Fla. June 20, 2017) (citing *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002)). A defendant also may assert a factual challenge, *id.*, "by submitting affidavit evidence in support of its position." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quotations omitted). When a defendant presents such evidence, "the burden . . . shifts back to the plaintiff to produce evidence supporting

jurisdiction" unless "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id*. Where the evidence conflicts, all reasonable inferences must be construed in favor of Plaintiff. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

## C.    Analysis

This Court must "undertake[] a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs.*, 556 F.3d at 1274. "[D]etermining whether jurisdiction is appropriate under Florida's Long-Arm Statute is a separate inquiry from determining whether exercising personal jurisdiction comports with the Due Process Clause." *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 859 (11th Cir. 2013) (citing *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010) ("[T]he federal due process analysis is not built into Florida's long-arm statute.")).

The Complaint does not specify whether Plaintiff is attempting to assert general or specific jurisdiction over Finch, but Plaintiff's Response clarifies that she is alleging specific jurisdiction. (Doc. 36 at 3). The Court begins with consideration of whether the Court's exercise of specific personal jurisdiction over Finch comports with the Due Process Clause.

"In a case involving specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria:" (1) "they 'must be related to the plaintiff's cause of action or have given rise to it;'" (2) "they must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum;' and" (3) "they 'must be such that the defendant should reasonably anticipate being haled into court there.'" *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (quoting *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005)). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

As discussed above, the events in the underlying case occurred while Plaintiff was housed at FPC Alderson in West Virginia. Finch states that she is "an attorney licensed to practice law in the State of West Virginia," where she lives and operates a law office. (Finch Aff., Doc. 28-1, at 1).[2] Finch is not barred in Florida, has never been admitted *pro hac vice* to any Florida court, does not have an office here, does not advertise or otherwise solicit clients here, and has never had any clients in Florida other than potentially "prepar[ing] deeds to West Virginia properties on behalf of

---

[2] Finch's Affidavit is unsigned, (Doc. 28-1 at 7), but Plaintiff does not dispute the factual statements referenced above.

Florida residents." (*Id.* at 2). Essentially, Finch's *only* contacts with Florida were that an attorney at a Florida law firm contacted Finch in West Virginia to file suit on behalf of Plaintiff—who may have been temporarily residing in Florida at the time[3]—in federal court in West Virginia. (*Id.* at 2–3).

In consideration of judicial efficiency, the Court will assume *arguendo* for the purposes of this Order that Plaintiff has met her burden on the first two elements of the Due Process Clause analysis. The Court must then still consider whether the exercise of personal jurisdiction over Finch "would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). This analysis requires that the specific "facts of each case . . . be weighed." *Id.* at 485–86 (quoting *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 92 (1978)). Specifically, "[t]he 'quality and nature' of an interstate transaction may sometimes be so 'random,' 'fortuitous,' or 'attenuated' that it cannot fairly be said that the potential defendant 'should reasonably anticipate being haled into court' in another jurisdiction." *Id.* at 486 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Ultimately, the facts of this case present exactly the type of random, fortuitous, and attenuated contact such that it cannot fairly be said that Finch should have reasonably anticipated being haled into Court here in Florida. Finch, a West

---

[3] For the purposes of this discussion, the Court assumes *arguendo* that Plaintiff was residing in Florida at the time Finch was retained.

Virginia attorney who has never appeared in a Florida court, was contacted to litigate a case in a West Virginia court for events that occurred in West Virginia. The fact that Plaintiff may have been temporary housed at FCI Tallahassee or at the ICE Detention Center in Jacksonville, Florida, is of little consequence. Nor is it particularly pertinent that a Florida attorney contacted Finch, a West Virginia-barred attorney, to assist in litigating a West Virginia case.

Finch has met her burden on this element. *Louis Vuitton*, 736 F.3d at 1355. Requiring Finch to be haled into this Court would "be fundamentally unfair" and thus, would be a violation of the Due Process Clause. *Id.* at 487.[4] Because the Court may not exercise personal jurisdiction over Finch, the claims against her will be dismissed.

## IV.   CONCLUSION

In accordance with the foregoing, it is ordered and adjudged as follows:

1. Defendant Laura M. Finch's Motion to Dismiss (Doc. 28) is **GRANTED in part** and **DENIED in part**.

   a. Finch's Motion is **GRANTED** insofar as the Court may not exercise personal jurisdiction over Finch.

   b. The claims against Finch are **DISMISSED for lack of personal jurisdiction**.

---

[4] Because the Court may not exercise personal jurisdiction over Finch under the Due Process Clause, the Court need not consider Florida's long-arm statute.

    c.  The Clerk is directed to terminate Finch as a Defendant and to amend the case style accordingly.

    d.  Finch's Motion is otherwise **DENIED**.

2.  Defendants', Rosemarie Feller, Angelica Jones, and Feller Law, P.A., Motion to Dismiss (Doc. 29) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on June 16, 2023.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record